(622 P.2d 149)

No. 51,450

CITY OF NEW STRAWN, KANSAS, A Municipal Corporation, *Appellant,* and KANSAS GAS AND ELECTRIC COMPANY, A Corporation, v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS: G. T. VAN BEBBER, WILLIAM G. GRAY and R. C. LOUX, as the constituent members of the State Corporation Commission; COFFEY COUNTY RURAL ELECTRIC COOPERATIVE ASSOCIATION, INC., A Corporation, *Appellees;* and KANSAS ELECTRIC COOPERATIVES, INC., A Corporation, Intervenor-*Appellee.*

Opinion filed January 16, 1981.

*William A. Buckles, Dennis D. Roth,* and *Steven L. Boyce,* of Buckles, Roth & Boyce, of Burlington, for appellant.

*A. Rodman Johnson,* assistant general counsel, and *Brian J. Moline,* general counsel, for appellee Kansas Corporation Commission.

*James M. Caplinger,* of James M. Caplinger, Chartered, of Topeka, for appellee Coffey County Rural Electric Cooperative Association, Inc.

*Bernard R. Phillips III,* of Topeka, for appellee Kansas Electric Cooperatives, Inc. (Intervenor).

Before FOTH, C.J., REES and MEYER, JJ.

MEYER, J.: The appellant City of New Strawn, Kansas (City), appeals from the State Corporation Commission's (KCC's) denial of Kansas Gas and Electric Company's (KG&E's) application for a certificate of convenience and necessity wherein KG&E sought to provide its service to City.

Appellee Coffey County Rural Electric Cooperative Association, Inc. (Coffey), was certificated by the KCC in 1938 and was the first and only electric supplier to serve the area which, in 1970, was incorporated as the City of New Strawn, Kansas. In 1977, City granted KG&E a franchise pursuant to K.S.A. 1979 Supp. 12-2001 to serve the City's citizens. Coffey, since 1938, has, and still does, serve City, although Coffey has never been granted a franchise by City.

Having been granted the franchise by City, KG&E applied to the KCC for the necessary changes in certificates of public convenience for transmission rights from its substation at Wolf Creek Generating Station to the New Strawn city limits. Coffey, City, and appellee Kansas Electric Cooperatives, Inc., intervened and participated in the hearings before KCC.

The evidence taken at the hearings indicated that the cost to KG&E of building a new transmission line was projected at $100,000, plus the cost of any land to be condemned for the purpose of constructing the line. Also to be reflected in the cost of providing service to City by KG&E was the purchase price of Coffey's existing distribution facilities in the City.

KG&E and City testified that because of delay by Coffey in acting upon a request for service to a mobile home park, the City's growth had been limited. A developer testified that he withdrew his option to purchase a mobile home park due to Coffey's delay and proposed high cost of services. There was countervailing evidence that the delay, if any, was very brief. KG&E testified that its feasibility study indicated its expense of $275,000 to duplicate existing transmission facilities to serve 200 customers would be beneficial to the public interest.

The KCC denied KG&E's application January 4, 1979. The Commission made the following findings of fact and conclusions of law:

"In conjunction with the foregoing summary, the Commission finds and concludes that:

"1. KGE and Coffey are public utilities within the definition provided in Kan.

Stat. Ann. Supp. 1978 66-104. As a result, the Commission has jurisdiction to determine whether or not KGE's application should be granted and whether or not the conflicting claims of Coffey should prevail.

"2. The statutory provision for determining whether or not a certificate to transact business should be granted is found in Kan. Stat. Ann. 66-131. The Commission's discretion under this provision is limited by the Retail Electric Suppliers Act (Kan. Stat. Ann. 1978 Supp. 66-1,170 et seq.), which sets forth the requirements for the territorial certification of retail electric suppliers. Kan. Stat. Ann. 1978 66-1,172 provides that the Commission 'shall cause the state to be divided into electric service territories . . .', with only one electric supplier being authorized to serve customers in the territory certified to it.

"3. The public policy underlying the Retail Electric Suppliers Act is set forth in Kan. Stat. Ann. 66-1,171. It states:

" 'It is hereby declared to be the public policy of this state to: (a) Encourage the orderly development of retail electric service; (b) avoid wasteful duplication of facilities for the distribution of electricity; (c) avoid unnecessary encumbrance of the landscape of the state; (d) prevent waste of materials and natural resources; (e) facilitate the public convenience and necessity; and (f) minimize disputes between retail electric suppliers which may result [in] inconvenience, diminished efficiency and higher costs in serving the consumer. In pursuing such public policy, it is the purpose of this act to provide for the division of the state into territories within which retail electric suppliers are to provide the retail electric service as provided in this act.'

"4. Moreover, Kan. Stat. Ann. Supp. 1978 66-1,172 provides that each electric supplier shall continue to provide electricity to customers served by it on the effective date of the Retail Electric Suppliers Act of July 1, 1976.

"5. Based on the Retail Electric Suppliers Act, the Commission finds that it would be inappropriate to grant KGE the certificate requested in Docket No. 115,213-U to serve New Strawn. Under the act, the Commission cannot deprive an electric supplier such as Coffey the right to serve customers being served by it on the enactment date. Because Coffey was supplying New Strawn on July 1, 1976, the Commission is constrained from permitting KGE to provide service to New Strawn.

"6. The Commission finds that the public policy of the act would be violated if KGE were granted permission to construct a transmission line in Docket No. EL 16999. As noted earlier, one of the policies is to prevent duplication of facilities. Because the construction of a transmission line from the Wolf Creek Generating Station would duplicate existing transmission lines feeding into Coffey's system at New Strawn, the Commission finds it inappropriate to grant KGE permission to built [sic] additional facilities. Moreover, the Commission finds that by denying KGE's request, it will be possible to achieve other policies in the act, viz., the avoidance of unnecessary encumbrances and the prevention of waste.

"7. By relying on the Retail Electric Suppliers Act, KGE contends that the Commission will defeat the purpose behind the franchise statute (Kan. Stat. Ann. 12-2001 et seq.). The franchise statute permits a city to grant permission for utility operations. Under Kan. Stat. Ann. 66-2001, a

" ' . . . governing body of any city *may* permit any person, firm or corporation to manufacture, sell and furnish artificial or natural gas light, and heat,

electric light, water, power or heat or steam heat to the inhabitants. (Emphasis added.)'

"Although Kan. Stat. Ann. 66-2001 does confer the right to permit utility operations by a city, the right is not mandatory as evidenced by the word 'may'. Therefore, the Commission is free to implement the Retail Electric Suppliers Act, even though the governing body of New Strawn is overturned in choosing KGE to serve the city under the franchise statute. This interpretation is reinforced by the language in Kan. Stat. Ann. 12-2002 which states that the franchise statute 'shall not be construed . . . to affect the jurisdiction of the corporation commission. . . .' As a result, the franchise statute cannot affect the Commission's jurisdiction under the Retail Electric Suppliers Act, and the determination that Coffey should be left to continue service to New Strawn.

"IT IS, THEREFORE, BY THE COMMISSION ORDERED THAT: the application of Kansas Gas and Electric Company for a certificate of convenience and authority is denied. Also denied are the other requests which accompany the application."

KG&E and City applied for judicial review of the KCC order; the district court upheld that order. Only City appeals to this court.

The primary contention herein is that the KCC erred in its interpretation of K.S.A. 1979 Supp. 66-1,170 *et seq.*, the Kansas Retail Electric Suppliers Act.

Since we are dealing with an issue of statutory construction, we have full power to review the interpretation of the statute by the KCC. See *Bill George Chrysler-Plymouth, Inc. v. Carlton,* 216 Kan. 365, Syl. ¶ 2, 532 P.2d 1351 (1975).

The Retail Electric Suppliers Act was passed by the legislature in 1976. The public policy contemplated by the act is stated in K.S.A. 1979 Supp. 66-1,171, and is recognized by the KCC order in Nos. 3 and 6 of its findings of fact and conclusions of law. In the act at K.S.A. 1979 Supp. 66-1,172(*a*), it is provided that:

"[O]nly one (1) retail electric supplier shall provide retail electric service, and any such territory established for a retail electric supplier pursuant to this section shall be certified to such retail electric supplier by the commission and such area shall be provided retail electric service exclusively by such supplier. . . ."

. . . . .

"(5) All single certified service territories or parts thereof existing on the effective date of this act, not assigned to a municipal retail electric supplier under provisions of this act as described in subsection (*a*)(3) or (*a*)(4) shall be retained as a single certified service territory by the originally certified retail electric supplier."

K.S.A. 1979 Supp. 66-1,173 basically prohibits a retail electric supplier from rendering its service to a consumer located in the certified territory of another retail electric supplier.

K.S.A. 1979 Supp. 66-1,172(*a*) and K.S.A. 1979 Supp. 66-1,173 make it clear that one of the policies underlying the act is to avoid duplication, or overlapping of, utility facilities and services.

The rights of all suppliers which were serving at the time of the act were "grandfathered" in by the provisions of K.S.A. 1979 Supp. 66-1,172. With regard to territories which had been certified to one supplier, the territory would be retained by the originally certified retail electric supplier under K.S.A. 1979 Supp. 66-1,172(*a*)(5). Not only had Coffey been serving City prior to and at the time of the enactment of the statute, but it had been certified by the KCC as early as 1938. The KCC was correct in concluding that the policy of the act to prevent duplication of facilities would be violated if KG&E were permitted to build additional facilities, because the construction of a transmission line would duplicate existing transmission lines feeding into Coffey's system.

City, however, contends that the KCC cannot refuse to grant a certificate of convenience and necessity when a municipality has granted the applying utility a franchise. In this connection City argues there are conflicting statutes which deal with the authority of a utility to serve a particular city and that the statutes which grant the City power to issue a franchise should prevail. Specifically, City claims that both K.S.A. 12-2001 *et seq.,* and K.S.A. 12-801 *et seq.* are in conflict with K.S.A. 66-101 *et seq.* and K.S.A. 1979 Supp. 66-1,170 *et seq.* (K.S.A. 12-801 *et seq.* applies to municipally-owned facilities and is, therefore, not applicable herein. The applicable part of K.S.A. 66-101 *et seq.* will be considered in conjunction with K.S.A. 1979 Supp. 66-1,170 *et seq.*) K.S.A. 1979 Supp. 12-2001 grants cities the power to issue a franchise to companies for the purpose of providing services to said city "upon the express conditions hereinafter imposed and not otherwise . . . ."

City stresses the language "upon the express conditions hereinafter imposed, and not otherwise" and states that this means that public property may be used by a private entity only when a franchise has been granted pursuant to that statute. The conditions which are mentioned in the statute are imposed upon the power of the city to grant such franchise and outline the procedure to be followed by the city in granting same. The language

is intended to insure that the city follows these procedures in the granting of the franchise and cannot be interpreted to limit the Corporation Commission's power of refusal to grant a certificate of convenience and necessity.

Moreover, K.S.A. 12-2002 specifically states that the franchise statute "shall not be construed . . . to affect the jurisdiction of the corporation commission . . . ." Under the Retail Electric Suppliers Act, at K.S.A. 1979 Supp. 66-1,174, and K.S.A. 1979 Supp. 66-104, KG&E is clearly subject to the jurisdiction of the KCC and does not fall within any of the jurisdictional exceptions listed in said statutes. The KCC, therefore, has power to deny a certificate of convenience and necessity regardless of whether the city has granted a franchise.

The fears expressed by City relative to its claim that disastrous limitations on city powers would follow if we were to affirm the KCC order herein, are thus unfounded. K.S.A. 1979 Supp. 66-1,170 *et seq.* does not repeal, by implication or otherwise, the franchise authority granted to cities under K.S.A. 12-2001 *et seq.* As applicable to the instant case, there is no conflict between K.S.A. 12-2001 *et seq.* and K.S.A. 1979 Supp. 66-1,170 *et seq.*

City also claims that the order denying the certificate of convenience and necessity was not reasonable.

Apart from issues of statutory construction, the question remains whether there was substantial competent evidence to support the order. The standard of review of the Commission's action with regard to certificates of convenience and necessity was extensively discussed in *Central Kansas Power Co. v. State Corporation Commission,* 206 Kan. 670, 675, 482 P.2d 1 (1971):

"If the order of the commission is based upon substantial and competent evidence the order will generally be considered reasonable."

*Reasonableness* is the standard of review by courts on appeal set out in K.S.A. 1979 Supp. 66-118d.

We conclude there was in the record competent and substantial evidence herein to support the "reasonableness" of the KCC's order.

Affirmed.