No. 57,425

KANSAS POWER AND LIGHT COMPANY, *Appellee,* v. THE STATE CORPO-
RATION COMMISSION OF THE STATE OF KANSAS, and THE C & W
RURAL ELECTRIC COOPERATIVE ASSOCIATION, INC., *Appellants.*

(699 P.2d 53)

Opinion
filed May 10, 1985.

*Jeff Kennedy,* assistant general counsel, Kansas Corporation Commission,
argued the cause, and *Brian J. Moline,* general counsel, was with him on the brief
for appellant KCC.

*Wayne W. Ryan,* of Ryan and Ryan, P.A., of Clay Center, argued the cause and
was on the brief for appellant C&W Rural Electric Cooperative Association, Inc.

*John K. Rosenberg,* general counsel—regulatory affairs, argued the cause and
was on the brief for appellee Kansas Power and Light Company.

*Bernard R. Phillips III,* staff counsel, was on the brief *amicus curiae* for Kansas
Electric Cooperatives, Inc.

The opinion of the court was delivered by

HERD, J.: This is an appeal from a district court judgment

vacating and remanding an order of the Kansas Corporation Commission (KCC). The KCC order denied a Kansas Power and Light (KP&L) application to construct an electric line extension in northern Riley County, concluding C&W Rural Electric Co-operative Association, Inc., (C&W) should continue to serve the area under the grandfather clause of K.S.A. 66-1,172.

Until recently, the northern area of Fort Riley military reservation was privately owned farmland. C&W held a certificate of authority to serve the area. The U.S. Government acquired the area in the 1960's by eminent domain in order to extend the northern boundaries of Fort Riley. C&W then filed an application to cease operations in this area, which was granted on January 31, 1967. As a result, C&W no longer holds a certificate of authority to serve the fort. Fort Riley expanded its operations into this territory by establishing a marina, a water well, and a gunnery range. In spite of having no certificate of authority, C&W applied for line extension authority to serve each of the fort's new facilities. The applications were granted as follows: The water well extension line was approved on May 16, 1969; the gunnery range extension line was approved on October 10, 1969; and the marina extension line was approved on June 19, 1974.

During this time, KP&L held the only county-wide certificate of convenience and necessity for electrical service for all of Riley County. In spite of this, on October 1, 1975, Fred Adam, director of utilities for the KCC, advised C&W and KP&L that both utilities had an obligation to serve the army at Fort Riley on request. In his letter to C&W, Mr. Adam stated that "both companies have equal rights and responsibilities to serve." This was the situation when the Retail Electric Suppliers Act, K.S.A. 66-1,170 *et seq.*, (RESA) became effective on July 1, 1976. The legislative intent of the Act is to divide "the state into territories within which retail suppliers are to provide the retail electric service." K.S.A. 66-1,171. The statutes direct the KCC to divide the state into exclusive electrical service areas and direct how the boundaries of the areas should be determined. The act contains a grandfather clause which is the nexus of this litigation. It provides:

> "Each retail electric supplier shall continue to have the right to serve all customers being served by it on the effective date of this act, except that such

suppliers, by agreement approved by the commission, may otherwise provide for electric service to such customers." K.S.A. 66-1,172(a).

After the passage of RESA, C&W filed an application for a certificate of authority for the three areas in Fort Riley it had authority to serve prior to 1967. The commission held C&W was not entitled to reinstatement of its territory. Instead the KCC found that KP&L was the exclusive authorized electric supplier in Fort Riley on the effective date of RESA. No appeal was taken from this order. C&W has continued to serve the three metering points in the northern area of Fort Riley. The existing line of C&W is capable of delivering seventy-five kilowatts of electricity. However, it actually delivers only thirty-five kilowatts.

In 1983, Fort Riley decided to build a new tank gunnery range in the same area as the old gunnery range, which was served by C&W. The new range required electrical service from a different delivery point and at a higher demand than that provided by C&W. Fort Riley requested the new service from KP&L.

The increase in the size of the gunnery range requires 1450 kilowatts of electricity, which is substantially greater than that which C&W can currently provide. For C&W to provide the additional electricity will require its line to the fort be rebuilt at a cost of $735,000.00. The cost is $538,929.00 for KP&L to provide the service.

On March 1, 1983, KP&L filed an application for authority to build a 9.32 mile transmission line to serve the expanded gunnery range. C&W subsequently applied to the KCC for a certificate of authority to serve the area it had been serving. The applications were consolidated and set for hearing. The KCC issued its order on October 25, 1983, denying the applications of both KP&L and C&W. The KCC determined C&W was entitled to continue serving Fort Riley from the three metering points since C&W would be required to merely increase its capacity rather than appreciably extend its lines in order to serve the new gunnery range. The basis for this finding was a set of maps stipulated to by the parties which indicated the proposed gunnery range fully encompassed the present gunnery range, which C&W served. In order to maintain the integrity of KP&L's certificate, the order specifically forbid C&W from encroaching any further into KP&L's territory. After a motion for rehearing was denied, KP&L appealed the order to the district court. The

district court held the grandfather clause of RESA entitled C&W to continue serving the electrical load existing on the effective date of RESA with only those facilities in place at that time. Thus, the added electrical demand of the new gunnery would be furnished by KP&L with C&W continuing to furnish its original service. This appeal followed.

The facts in this case are not in dispute. Rather, the entire case is dependent upon the statutory construction of RESA. We have held:

"The ruling of an administrative agency on questions of law, while not as conclusive as its findings of fact, is nevertheless persuasive and given weight, and may carry with it a strong presumption of correctness, especially if the agency is one of special competence and experience." *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA,* 233 Kan. 801, Syl. ¶ 4, 667 P.2d 306 (1983).

There is no question the KCC is an agency of special competence and experience. The question here, however, is not technical, but statutory construction of a question of law. Thus, the district court is not required to give deference to the KCC's interpretation of the grandfather clause of the RESA. Rather, the court is obligated to apply the established rules of statutory construction, the first of which is to give effect to the statute's clear meaning. If the statute, however, is ambiguous and unclear, the court shall determine the legislative intent of the statute and give it effect, absent a constitutional impediment. No constitutional question is raised.

In support of its interpretation that the grandfather clause only authorized C&W to serve its customers at the load existing on the effective date of RESA with only those facilities in place at the time of RESA, the district court found the grandfather clause to be ambiguous. This authorized the district court to look to the legislative intent of the act. The ambiguity cited by the district court arises from two provisions in the grandfather clause which are conflicting. K.S.A. 66-1,172 provides a utility shall have the right to continue to serve customers served by it prior to enactment of RESA, but also provides that in each certified territory only one utility shall provide electric service.

In looking to the legislative intent, the district court made the following findings:

"It appears from the record that the Army's plans at Fort Riley, Kansas call for

construction of extensive new electric consuming facilities within KPL's exclusive service territory. The 'grandfather' provision of K.S.A. 66-1,172(a) was intended to preclude the loss of investment in existing distribution facilities serving connected loads. It was not intended as a springboard for one utility to enjoy unlimited growth in another's territory. Although no precise criteria are defined in the statute, its intent would best be served by allowing a 'grandfather' utility to serve only the load existing at the time RESA was enacted with facilities in place at the time RESA was enacted. Service of new electric consuming facilities or other increases in load requiring upgraded delivery capability should not be considered within the 'grandfather' rights created by K.S.A. 66-1,172(a)."

Thus, the district court concluded the grandfather clause did not allow an increase in production of electricity, and KP&L was held to be the proper utility to serve the area of the new gunnery range.

The district court also found the KCC's order was inconsistent with the legislative intent for another reason:

"The Commission, in interpreting the grandfather clause, has ruled that not only may a utility continue to serve those customers served by it on the date RESA was enacted, but that this same utility may substantially upgrade and expand its facilities to new areas within KP&L's exclusive territory."

The KCC initially argues that this ruling by the district court is a misconstruction of the KCC order, since the order specifically forbid C&W from encroaching any further into KP&L's territory in order to maintain the integrity of KP&L's certificate.

Appellants next argue the grandfather clause is not ambiguous and clearly shows the KCC is allowed to provide for only one utility in a particular area, unless a utility was in the area prior to the enactment of the RESA, in which case that utility may continue to serve its customers in that particular area only.

Further, appellants argue the district court's decision is inconsistent with the goals set out in the RESA which are: (1) avoiding wasteful duplication of facilities for the distribution of electricity; (2) avoiding unnecessary incumbrances of the landscape of the state; and (3) preventing waste of materials and public resources. See K.S.A. 66-1,171. The inconsistency with these goals occurs, appellants assert, because under the district court ruling C&W would continue to be able to provide to the new gunnery range the level of power it had previously supplied to the old gunnery range, but KP&L would be required to provide any amount of electricity over that capacity. Further, KP&L would have to build a nine-mile line into the area, while

C&W is already there and would merely have to increase its capacity rather than extend its lines. Appellants contend this results in wasteful duplication of facilities, places unnecessary incumbrances on the landscape, and causes a waste of materials and public resources.

For further support of its interpretation of the RESA grandfather clause, appellants cite *City of New Strawn v. Kansas Corporation Commission*, 5 Kan. App. 2d 630, 622 P.2d 149 (1981). In that case the question presented was whether Coffey County Rural Electric Cooperative Association or KG&E was entitled to serve the city of New Strawn. The City determined it preferred to obtain service from KG&E rather than Coffey County and granted KG&E a franchise. The Commission found it inappropriate to grant KG&E a certificate to serve New Strawn because Coffey County could not be deprived of the right to serve the customers being served on the enactment date of RESA. In upholding the KCC's decision, the Court of Appeals held:

> "The rights of all suppliers which were serving at the time of the act were 'grandfathered' in by the provisions of K.S.A. 1979 Supp. 66-1,172. With regard to territories which had been certified to one supplier, the territory would be retained by the originally certified retail electric supplier under K.S.A. 1979 Supp. 66-1,172(a)(5). Not only had Coffey been serving the City prior to and at the time of the enactment of the statute, but it had been certified by the KCC as early as 1938. The KCC was correct in concluding that the policy of the act to prevent duplication of facilities would be violated if KG&E were permitted to build additional facilities, because the construction of a transmission line would duplicate existing transmission lines feeding into Coffey's system." 5 Kan. App. 2d at 634.

Appellants argue *New Strawn* is similar to this case. First, KP&L, like KG&E, applied for permission to build a transmission line that would duplicate existing facilities. The line proposed by KP&L is over nine miles long and would cost over $530,000, whereas the one proposed by KG&E would have cost $100,000. Appellants argue the public policies of preventing duplication of facilities and unnecessary incumbrances of the landscape supported by the Court of Appeals in *New Strawn* are similar to the policies supported by the KCC's order in the instant case. *New Strawn*, however, is distinguishable from the present case. In *New Strawn*, the Coffey County REC held a certificate of authority over the territory which was being infringed upon by KG&E. In the instant case, KP&L's authorized

territory is being infringed upon by C&W. In addition, the power demand in this case is increased almost forty fold. Such was not true in *New Strawn.*

The KCC argues there are also equitable factors which went into its decision in the instant case. Those equitable factors included the direction made by the director of utilities of the KCC in 1975 who told C&W that it had "equal rights and responsibilities to serve" with KP&L, and the fact that C&W had served the points in question for over fifteen years with the knowledge and consent of KP&L.

KP&L argues these equities are improperly relied upon because estoppel, waiver, and laches were never pled nor proven as is required in the case of these affirmative defenses. The KCC, however, does not utilize these as affirmative defenses, but rather cites them as equitable reasons for its decision. For that reason we hold them proper to consider.

KP&L further argues in its brief that the KCC order was unlawful since KP&L had the exclusive right to serve facilities at Fort Riley and because C&W's claim was a collateral attack on the 1977 ruling granting KP&L the exclusive right to serve. Both of these arguments are inappropriate on appeal. They are inconsistent with the district court's ruling that C&W did have a right under the grandfather clause to be present at Fort Riley, but could not increase its capacity. There was no cross-appeal from this finding by the district court. Therefore, the matter of the exclusivity of KP&L's certificate of authority over Fort Riley is not before this court.

We hold the conflicting provisions of the grandfather clause in K.S.A. 66-1,172 render the clause ambiguous. The trial court, therefore, correctly looked to the legislative intent of the act.

In determining the legislative intent of the Kansas statute, the construction of a similar Missouri law interpreted in *Missouri Public Service Co. v. Platte-Clay Electric Cooperative, Inc.,* Util. L. Rep. (CCH) ¶ 24,653 (Mo. App., No. WD 35272, Dec. 4, 1984), *rev. granted* April 1985 is persuasive. The Missouri statute (Mo. Rev. Stat. § 394.315 [1984 Supp.]) provides: "Every rural electric cooperative shall be entitled to continue to supply retail electric energy to persons at metering points at which service is being provided on August 13, 1982." In *Missouri Public Service Co.,* the cooperative had furnished electricity to

the Ramey farm since 1940. The farm was a standard individually owned and operated dairy farm. It was served with a single phase electrical line. In 1981, Ramey sold the farm to Alfa-Laval, Inc., a dairy equipment manufacturer, to be used as an experimental farm to test equipment. The farm was still operated as a dairy farm, but operations were intensified. The change required installation of new commercial capacity electrical lines with a meter providing three phase delta service. Both the cooperative and Missouri Public Service Co., holder of an exclusive franchise on the territory, were capable and desirous of providing the service. The court held the increased demand constituted a change of use, making the statute inapplicable, and thereby awarded Missouri Public Service Co. the right to serve the Ramey farm under its franchise.

*Missouri Public Service Co.* is similar to the situation here. The grandfather clause of K.S.A. 66-1,172 provides C&W protection to continue to serve its customers within KP&L's exclusive territory. We are convinced, however, such protection does not apply to new uses and new demands. We find the purpose of the grandfather clause is to protect the investment of utilities which have previously built lines and facilities and rendered service in a territory awarded by RESA exclusively to another. To authorize such an encroaching utility to build new lines and expand its service in the territory within which it is permitted to continue to serve by sufferance is in direct conflict with the express purpose and goal of RESA to avoid duplication. Even though the customer here is the same customer C&W was authorized to continue serving at its three perimeter locations by RESA, it is obvious from the sharply increased demand this is not a continuation of previous service. This is a request for new service requiring a major new expenditure. We agree with the district court. C&W is entitled by all the equities to continue to serve its previous customer at the same rate as before and thus recover its cost of installation, but KP&L, holder of the only certificate of authority, is entitled to build its line and provide service for the new increased demand.

The judgment of the trial court is affirmed.

SCHROEDER, C.J., dissenting.