(839 P.2d 1253)

No. 68,117

EVA HAVENS, *Appellee*, v. BOARD OF ADULT CARE HOME ADMINISTRATORS, *Appellant.*

 Opinion filed October 23, 1992. 

*Marvin G. Stottlemire*, of Kansas Department of Health and Environment, of Topeka, for appellant.

*William E. Enright*, of Scott, Quinlan & Hecht, of Topeka, for appellee.

Before BRISCOE, C.J., LARSON and PIERRON, JJ.

PIERRON, J.: This appeal arises out of the district court's interpretation of the Kansas Adult Care Home Administrators Act, K.S.A. 65-3501 *et seq.* The Board of Adult Care Home Administrators (Board) appeals the trial court's decision that only a person acting as an "administrator" as defined in K.S.A. 65-3501(c) is subject to discipline under K.S.A. 1991 Supp. 65-3503 and K.S.A. 1991 Supp. 65-3508. We reverse.

The Board revoked Eva Havens' adult care home administrator's license. The revocation was based on numerous instances of serious abuse of nursing home residents by an employee of Medicalodge North of Pittsburg, Kansas, (Medicalodge North) as detailed in the findings of fact set out by the Board. Havens was employed as an "administrative consultant" by Medicalodge, Inc., for Medicalodge North. Havens was responsible for overseeing the activity of the resident administrator. During the time Havens

was responsible for Medicalodge North, the violations referenced above occurred. The Board found that Havens was aware of the violations and had the authority to fire or otherwise discipline the personnel responsible. Havens failed to take any action.

The Board found Havens had violated three sections of 65-3508 and had breached her duty to report patient abuse.

The Board stated that although Havens' title was administrative consultant, rather than administrator, she held and worked under a license issued by the Board. The Board went on to state it could not "allow facilities under her direction to accumulate such severe and repetitious abuses and violations." Finding the violations to be egregious, the Board revoked her license.

After Havens' license was revoked by the Board, she petitioned the Shawnee County District Court for judicial review. In her petition for review, Havens argued the Board's action was outside the scope of its authority.

The disciplinary section of the Act, K.S.A. 1991 Supp. 65-3508, provides for the revocation of the license of an "adult care home administrator." Havens argued the term "adult care home administrator" is not specifically defined within the Act. However, the terms "adult care home" and "administrator" are defined within the Act. K.S.A. 65-3501(a) and (c). Havens argued the two definitions should be joined together to create a definition for adult care home administrator. Havens argued that under this interpretation she could not be considered an adult care home administrator and so the Board could not revoke her license.

The district court agreed with Havens' interpretation of the Act and overruled the Board's action. The Board now appeals, claiming the trial judge interpreted the Act incorrectly.

A district court may hold an agency action invalid if the court finds the agency "erroneously interpreted or applied the law." When this court reviews an agency action, the standard is the same as a district court's review of the action. *537721 Ontario, Inc. v. Mays,* 14 Kan. App. 2d 1, 2, 780 P.2d 1126, *rev. denied* 245 Kan. 785 (1989). See K.S.A. 77-601 *et seq.*

When determining a question of law, an appellate court is not bound by a trial court's decision. See *Memorial Hospital Ass'n, Inc. v. Knutson,* 239 Kan. 663, 668, 722 P.2d 1093 (1986).

The only issue raised on appeal is whether the Board or the district court correctly interpreted the Act. Havens also argues the Board erroneously interpreted K.S.A. 1991 Supp. 65-3503, thereby exceeding its scope of authority. The Board argues the district court erred in interpreting 65-3503, which defines the Board's authority, and that the Board correctly interpreted the statute and has the authority to revoke Havens' license.

The rules of statutory construction were thoroughly stated in *Todd v. Kelly*, 251 Kan. 512, 837 P.2d 381 (1992). Interpretation of statutes is a question of law. The interpreting court should give the law the effect intended by the legislature and avoid unreasonable results. Intent should be determined from considering the act *as a whole*. Provisions should be reconciled to make them "consistent, harmonious, and sensible." The court should attempt to give effect to legislative intent, even if that requires omitting or inserting words, phrases, or clauses. 251 Kan. at 515-16. Perhaps the most important statement is the following:

"'When the interpretation of some one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law.'" *Todd v. Kelly*, 251 Kan. at 516. (quoting *Kansas Commission on Civil Rights v. Howard*, 218 Kan. 248, Syl. ¶ 2, 544 P.2d 791 [1975]).

Havens argues this case involves the definition of the term administrator as used in K.S.A. 65-3501(c). The definition of administrator set out in K.S.A. 65-3501(c) states: " 'Administrator' means the individual directly responsible for planning, organizing, directing and controlling the operation of an adult care home." There is no dispute that Havens was not an administrator as defined by this section of the statute. The Board found that David Jackson, not a party to this appeal, was the administrator. His license was also revoked.

Havens argues that because "administrator" is defined in 65-3501(c), this court cannot assign any other meaning to the term and, thus, she cannot be disciplined by the Board.

However, the issue in this case is not defining "administrator" or even "adult care home administrator." The issue, instead, is how the allegedly conflicting sections of the Act (K.S.A. 1991

Supp. 65-3503 and 65-3508) can be interpreted in a manner that is harmonious and consistent. At the same time, the statutory construction should comport with the "spirit and reason" of the law.

K.S.A. 1991 Supp. 65-3503(a)(3) states that the Board shall have the power to "issue licenses to individuals who meet [licensing] standards, *and revoke or suspend licenses issued by the board or reprimand, censure or otherwise discipline a person holding any such license as provided under K.S.A. 65-3508 and amendments thereto.*" (Emphasis added.)

K.S.A. 1991 Supp. 65-3508 sets out the violations for which a person's license may be revoked and the procedure which should be followed when a license is revoked or other disciplinary action is taken. The Board's authority to discipline a person is not enunciated in 65-3508. Although 65-3508 states the Board may revoke the license of an "adult care home administrator," it is K.S.A. 1991 Supp. 65-3503 which authorizes the Board to take such action.

Arguably, the language of these two statutes is in conflict. K.S.A. 1991 Supp. 65-3503 allows the Board to revoke licenses previously issued. K.S.A. 1991 Supp. 65-3508 states that "[t]he license of an adult care home administrator . . . may be revoked. However, construing the Act as a whole, it appears that 65-3503 defines who the Board has authority to discipline and 65-3508 defines the procedure for the disciplinary action. This interpretation of the statutes allows them to be construed in a harmonious fashion—neither statute receives greater emphasis. This interpretation does not require the court to further define any terms used in the statutes.

Havens does not discuss legislative intent. The Board argues the intent of the Act is to protect the citizens of Kansas. Assuming that this is true, the only interpretation which would meet this goal is the Board's. If the court accepts Havens' interpretation, an entire class of license holders will be placed outside the reach of the Board's disciplinary authority. At oral argument, Havens conceded no other body would have the authority to regulate her license. It seems obvious from reading the Act that it was not the intention of the legislature to create a class of licensed persons

not subject to discipline, and the language of the Act does not require it.

The Board also argues that the construction placed on statutes by an administrative agency is entitled to deference by the courts. In *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA*, 233 Kan. 801, 809-10, 667 P.2d 306 (1983), the Kansas Supreme Court clearly supported this policy. Havens argues the agency's interpretation of a statute is not necessarily entitled to deference and cites *Kansas Power & Light Co. v. Kansas Corporation Comm'n*, 237 Kan. 394, 699 P.2d 53 (1985), to support this position. However, in the paragraph preceding the one from which Havens quotes, the court also stated that agency interpretations are entitled to judicial deference and cited *Kansas Bd. of Regents* to support this proposition. 237 Kan. at 397.

Havens argues that a statute authorizing the revocation of a license is penal and must be strictly construed. Havens cites no Kansas cases to support this proposition. Accepting, arguendo, the truth of Havens' statement, it is important to note that, while the Kansas Supreme Court has stated that penal statutes should be strictly construed (*State v. Frazier*, 248 Kan. 963, 971, 811 P.2d 1240 [1991]), the court has also held this rule " 'is subordinate to the rule that judicial interpretation must be reasonable and sensible to effectuate legislative design and the true intent of the legislature.' " *State v. Gonzales*, 245 Kan. 691, 705, 783 P.2d 1239 (1989) (quoting *State v. Carmichael*, 240 Kan. 149, 159, 727 P.2d 918 [1986]). Allowing people in Havens' position to retain a license is contrary to legislative intent.

After applying our canons of statutory interpretation, we concur with the position taken by the Board. For the reasons set out above, we reverse the trial court and reinstate the Board's revocation of Havens' license.

Reversed.