(31 P.3d 962)
No. 86,071

LYON-COFFEY ELECTRIC COOPERATIVE, INC., *Appellant*, v. STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Appellee*, and THE CITY OF BURLINGTON, KANSAS, *Intervenor/Appellee*.

Opinion filed August 17, 2001.

*Stuart S. Lowry,* of Lowry & Johnson, of Valley Falls, for appellant.

*Caroline Ong,* advisory counsel, *Paula Lentz,* assistant general counsel, and *Susan B. Cunningham,* general counsel, of Kansas Corporation Commission, for appellee.

*Stephen Smith,* of Burlington, for intervenor/appellee.

Before MARQUARDT, P.J., JOHNSON, J., and JACKSON, S.J.

JACKSON, J.: This is an action in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.* In two separate actions, the State Corporation Commission of the State of Kansas (KCC) granted the application of the City of Burlington (Burlington) for certificates to provide retail electric service within areas annexed by Burlington. The KCC orders also terminated the certificate to provide electric service in the annexed areas that had been held by Lyon-Coffey Electric Co-

operative, Inc. (Lyon-Coffey). Lyon-Coffey appealed the KCC orders to the district court of Coffey County. The two separate actions were consolidated. The trial court granted summary judgment to the KCC and upheld the agency orders. Lyon-Coffey appeals.

The uncontroverted facts adopted by the trial court are:

1.   Lyon-Coffey is an electric cooperative providing retail electric service within portions of Coffey County, Kansas, including areas adjacent to and within the corporate limits of the City of Burlington, Kansas.

2.   Authority to provide electric service in Coffey County was granted to Lyon-Coffey by the KCC through certificates of convenience and authority.

3.   Between 1982 and 1997, several portions of the territory for which Lyon-Coffey provided electric service were annexed by the City of Burlington. The annexed areas are referred to by the parties and the KCC as Items 1, 2, and 3.

4.   Item 1 involves Ordinances 316, 617, 629, and 548. At this time, the tracts covered by Ordinances 617 or 629 do not have any electric customers. Burlington provides service to customers in the other two tracts. Lyon-Coffey does not currently have customers in the Item 1 area and does not have a franchise for this area.

5.   Item 2 is land annexed by Ordinance 440. Lyon-Coffey received a 10-year franchise for this area in 1988 but was notified in 1998 that the franchise was not being renewed. Lyon-Coffey has acknowledged that the franchise has been terminated. Lyon-Coffey continues to provide service to customers in this area but does so without a franchise. Burlington has stated that it intends to provide electric service to the Item 2 area.

6.   Item 3 concerns Ordinance 534. Lyon-Coffey currently provides service to the Item 3 area but does not have a franchise for this territory. Burlington intends to provide electric service to the territory in Item 3.

7.   On May 6, 1999, in case No. 98-BULE-709-COC, Burlington filed an application with the KCC for a certificate of convenience and authority for transmission rights in the annexed areas. On June 24, 1999, in case No. 98-BULE-824-COC, Burlington filed an application with the KCC for a certificate of convenience and authority to provide electric service in the annexed areas. Both of these applications requested that the KCC terminate the certificate for these areas, which was held by Lyon-Coffey.

8.   More than 180 days have passed since the dates of all the annexations.

9.   Lyon-Coffey never obtained a franchise from Burlington to provide electric service in the annexed areas in Items 1 and 3.

10.   Lyon-Coffey's franchise in Item 2 was terminated by Burlington in 1998.

11.   Burlington has stated that it intends to provide electric service itself to the annexed areas.

Lyon-Coffey challenges the trial court's and the KCC's interpretation of K.S.A. 66-131, K.S.A. 66-1,171, and K.S.A. 66-1,176.

Under the KJRA, an appellate court can grant relief if it determines the agency erroneously interpreted or applied the law. K.S.A. 77-621(c)(4). The parties seeking relief from an agency action have the burden of showing that the agency's order is invalid. K.S.A. 77-621(a)(1).

"The interpretation of a statute by an administrative agency charged with the responsibility of enforcing a statute is entitled to judicial deference and is called the doctrine of operative construction. Deference to an agency's interpretation is particularly appropriate when the agency is one of special competence and experience. Although an appellate court gives deference to the agency's interpretation of a statute, the final construction of a statute lies with the appellate court, and the agency's interpretation, while persuasive, is not binding on the court. Interpretation of a statute is a question of law over which an appellate court's review is unlimited. [Citation omitted.]" *In re Appeal of United Teleservices, Inc.,* 267 Kan. 570, 572, 983 P.2d 250 (1999).

An electric public utility means every corporation, company, individual, or association that owns, controls, operates, or manages for public use any equipment, plant, or generating machinery for generating or selling electricity. K.S.A. 66-101a; K.S.A. 2000 Supp. 66-104. A municipally owned or operated electric utility located outside the city's corporate limits by more than 3 miles is also included in the definition of an "electric public utility," but a municipally owned or operated utility located within the city's corporate limits or within 3 miles outside the city's limits is not. K.S.A. 2000 Supp. 66-104.

A public utility must obtain a certificate from the KCC that public convenience will be promoted before providing services in Kansas; however, a municipally owned or operated public utility is not required to have KCC certification unless it is located more than 3 miles outside the city's limits. K.S.A. 66-131.

A city has authority to grant a franchise to any public utility located and operated within such city or principally operated for the benefit of such city or its people. K.S.A. 66-133. Any complaints regarding such utility are filed with the KCC; if the KCC finds merit in the complaints, it recommends to the city to make the

necessary changes. If the city does not, the KCC may file a suit against the city. K.S.A. 66-133(3).

Specific statutes apply to the retail supply of electricity. The legislature enacted the Retail Electric Suppliers Act (RESA), K.S.A. 66-1,170 *et seq.*, in 1976. L. 1976, ch. 284, §§ 1-8. The public policy for RESA is to (a) encourage the organized development of retail electric service; (b) avoid wasteful duplication of facilities for distribution of electricity; (c) avoid needless encumbrance of the landscape; (d) conserve materials and natural resources; (e) facilitate public convenience and necessity; and (f) minimize disputes between retail electric suppliers to avoid inconvenience, decreased efficiency, and higher costs. K.S.A. 66-1,171.

To accomplish RESA's policy, the legislative intent was to divide the state into territories within which retail suppliers are to provide the retail electric service. K.S.A. 66-1,171; *Kansas Power & Light Co. v. Kansas Corporation Comm'n*, 237 Kan. 394, 395, 699 P.2d 53 (1985). Under RESA, the KCC must divide the state into exclusive electrical service areas, allow only one retail electric supplier to provide retail electric service within each area, and certify that area to the retail electric supplier. K.S.A. 66-1,172.

Under RESA, a municipally owned or operated retail electric supplier is not required to have KCC certification unless it is located or provides service outside of the city's limits. K.S.A. 66-1,174. Unlike the general statutes for public utilities, RESA has a statute regarding the annexation of an area by a city, which the KCC has certified to a retail electric supplier. In such situations, K.S.A. 66-1,176 (a) and (b) provide:

"(a) All rights of a retail electric supplier to provide electric service in an area annexed by a city shall terminate 180 days from the date of annexation, unless such electric supplier is then holding a valid franchise for service in the area granted by the annexing city. . . . In the event service rights are terminated pursuant to this section, the [KCC] shall certify such annexed area as a single certified territory to the supplier holding a franchise for or then providing retail electric service in the city immediately prior to the annexation.

"(b) In the event the supplier holding a franchise or then providing retail electric service does not effect the assumption of electric service to the annexed area at the termination of the applicable 180-day or 210-day period as provided in subsection (a), then the originally certified supplier shall have the right to continue

service to the annexed area and charge its ordinary rates therefor until such supplier does assume service to the annexed area. Such service shall be free of any franchise fee or other compensation to the city or the electric supplier holding the franchise. If the supplier holding a franchise has not assumed service to the annexed area within 180 days following the applicable 180-day or 210-day period provided in subsection (a), the city may require the originally certified supplier to obtain a franchise in order to continue service to the annexed area."

In this case, the KCC interpreted and applied the provisions of K.S.A. 66-1,176(a) and determined that it was obliged to terminate Lyon-Coffey's certificates of authority and grant certificates to Burlington to supply electricity to the annexed areas.

Lyon-Coffey contends that KCC incorrectly determined that it was required to terminate Lyon-Coffey's certificates pursuant to K.S.A. 66-1,176(a). Lyon-Coffey argues that subsection (a) does not apply because Burlington did not grant a franchise or begin to serve the annexed areas within 180 days of the annexations. It contends that subsection (b) applies because Burlington did not assume service for more than 180 days following the initial 180-day termination (a total of 360 days); as such, subsection (b) only authorizes Burlington to grant a franchise to Lyon-Coffey and does not authorize or require the KCC to terminate Lyon-Coffey's certificate and grant a certificate to Burlington.

The difficulty with Lyon-Coffey's argument is that it reads K.S.A. 66-1,176(b) independently of subsection (a). Clearly, the language in subsection (b) upon which it relies is prefaced by a reference to subsection (a) and must be read together. If possible, a court should attempt to reconcile different provisions of an act so as to make them consistent, harmonious, and sensible. *Rockers v. Kansas Turnpike Authority*, 268 Kan. 110, 113, 991 P.2d 889 (1999). When subsections (a) and (b) are read together, subsection (b) only gives the existing certified supplier the right to continue to provide service after annexation if a new supplier cannot promptly assume service. By doing so, it ensures that there is no interruption in service to customers. Subsection (b) also provides that if the new supplier cannot assume service within the applicable 360-day or 390-day time frame after the annexation, the city can require the existing certified supplier to obtain a franchise for the annexed area.

If K.S.A. 66-1,176(b) is interpreted as Lyon-Coffey argues, the result would be that it would be granted a continuing franchise contrary to Burlington's decision. The result would be contrary to the franchise authority granted to cities under K.S.A. 12-2001 *et seq.* To repeal K.S.A. 12-2001 *et seq.*, without specific language from the legislature would lead to unreasonable results. The legislature is presumed to intend that its enactments be given a reasonable construction so as to avoid absurd or unreasonable results. *Rockers*, 268 Kan. at 113.

The trial court and the KCC were correct in deciding that K.S.A. 66-1,176(a) controlled in the present case. Lyon-Coffey did not acquire a perpetual right to provide service within the city limits of Burlington when Burlington did not promptly arrange for another utility to provide service to the franchised areas.

Lyon-Coffey argues that K.S.A. 66-131 and K.S.A. 66-1,171 require the KCC to make a finding of public convenience in order to grant a certificate and this requirement should be applied to K.S.A. 66-1,176. It contends that the KCC must conduct a hearing and make a finding that the issuance of a certificate to Burlington would promote public convenience. Lyon-Coffey urges that such an interpretation would make these statutes harmonious and consistent.

The KCC responds that K.S.A. 66-131 does not control because it is a general statute and the specific statute which applies is K.S.A. 66-1,176(a). Further, K.S.A. 66-1,171 sets forth public policy for dividing the state into exclusive service territories and does not relate to the requirements for issuing a certificate under K.S.A. 66-1,176(a).

Both parties argue that *United Tel. Co. of Kansas v. City of Hill City*, 258 Kan. 208, 899 P.2d 489 (1995), and *City of New Strawn v. Kansas Corporation Commission*, 5 Kan. App. 2d 630, 622 P.2d 149 (1981), support their respective positions.

In *Hill City*, United, a telephone utility, had a KCC certificate for the area encompassing two cities. Although only Hill City granted a franchise to United, the analysis and result were the same for both cities. Toward the expiration of the franchise term, United undertook a major project to upgrade its services and facilities.

Dissatisfied with United's telephone service, Hill City terminated its franchise at the expiration of the term, advising United that it no longer had authority to use the city's infrastructure to update its lines. Hill City granted the franchise to another telecommunications utility which did not have a certificate from the KCC for that area. The KCC set forth orders regarding the completion of the necessary improvements by United.

The KCC was also conducting hearings regarding the quality of United's service. During this investigation, Hill City filed a complaint against United, requesting that the KCC decertify United. The KCC refused to address the franchise terms between Hill City and United and also refused to decertify United because of the franchise termination. The KCC concluded that Hill City lacked authority to order United to cease its operations and modernization plans in its area.

Later, United filed a petition for mandamus, declaratory, and injunctive relief, requesting an order that it be allowed to use Hill City's property for the placement of its telecommunications facilities and to enjoin Hill City from interfering with United's use of the public property. The trial court held that Hill City could not be compelled to enter into a franchise with United. However, United had a statutory right to use Hill City's property to string aerial lines but not an underground cable. Hill City and United appealed.

The Kansas Supreme Court concluded that United could update its equipment and service, including the right to bury cable, without a franchise from Hill City because it held the certificate from the KCC; the city could refuse to grant a franchise to United; and the KCC could grant or refuse a certification regardless of the city's franchise decision. 258 Kan. at 223-25. Pursuant to the statutes for each tribunal, "the powers of the cities, telephone companies, and the KCC are supreme within their own areas of regulation." 258 Kan. at 223.

In *New Strawn*, the KCC granted a certification to an electric cooperative association in 1938 in an area which was later incorporated as the City of New Strawn (City) in 1970. The City never granted a franchise to the co-op. Years later, the City granted a

franchise to KG&E. KG&E applied to the KCC to change the certificate, which was denied. The trial court upheld the KCC order, and the City appealed, contending that the KCC erred in its interpretation of RESA. The City believed that the KCC could not refuse to grant a certificate when the City granted a franchise to another supplier.

This court found that KG&E was clearly subject to the jurisdiction of the KCC under K.S.A. 66-104 and K.S.A. 66-1,174 and no statutes for jurisdictional exceptions applied. Thus, the KCC had the power to deny a certificate regardless of whether the City had granted a franchise. 5 Kan. App. 2d at 635.

Neither *Hill City* nor *New Strawn* involved an annexation and termination of certification of a supplier's territory under K.S.A. 66-1,176(a). The distinction in this case involves the KCC granting certification to a municipally owned and operated retail electric supplier which is located within the city's corporate limits. Under K.S.A. 66-131 and K.S.A. 66-1,174, such public electric utility is not required to be certified by the KCC. Here, Burlington's electric supplier was exempt from the KCC's jurisdiction.

When an area is annexed by a city, it is then within the city's corporate limits and neither K.S.A. 66-131, K.S.A. 66-1,171, nor K.S.A. 66-1,176 require the KCC to make a finding of public convenience in order to grant a certificate to such a municipally owned or operated utility. The statutes are harmonious and consistent regarding the certification of a municipally owned or operated utility located within the city's corporate limits.

Lyon-Coffey argues that the KCC and the trial court erred in concluding that the word "shall" in K.S.A. 66-1,176(a) is mandatory. It contends that the word "shall" as used in the statute is directory because it gives a view to the proper, orderly, and prompt conduct of business, has no words of absolute prohibition, and does not provide a penalty for noncompliance.

Whether language in a statute is mandatory or directory is determined on a case-by-case basis, and the criteria is whether compliance with the language is essential to preserve the rights of the parties. *Marais des Cygnes Valley Teachers' Ass'n v. U.S.D. No. 456*, 264 Kan. 247, 251, 954 P.2d 1096 (1998). If it is essential to

the preservation of the rights of the parties, the statute is mandatory. Factors indicating the provisions of a statute are mandatory are: (1) the use of negative words that require an act shall be done by no other method or at no other time than that stated, or (2) provision for a penalty or other consequence for noncompliance. 264 Kan. at 251. The statute is directory where the provision establishes a manner of proceeding and a time within which an official act is to be done and is intended to secure order, system, and dispatch of the public business. 264 Kan. at 251.

Here, the statute preserves the rights of the existing retail electric supplier when a portion of its area is annexed and the city grants it a franchise. The city's right to decide whether to grant a franchise to the certified supplier for the annexed area is also preserved. If the city does not grant a franchise to the certified supplier, the certified supplier's rights are also protected under subsection (b) if the new supplier cannot immediately begin providing the service and under subsection (c) if the new supplier purchases the certified supplier's facilities or operations. These provisions not only preserve the rights of the parties but also are essential to maintain retail electric service to consumers in the annexed area. Thus, the language of K.S.A. 66-1,176(a) is mandatory.

Finally, Lyon-Coffey argues that K.S.A. 66-1,176(a) is unconstitutional on its face or as applied. It contends that the statute unconstitutionally delegates legislative power to the city in deciding a statewide issue about which retail electric supplier should be certified by the KCC. It argues that this violates Article 2, § 21 of the Kansas Constitution.

Interpretation of a statute is a question of law, and appellate review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998). A statute is presumed constitutional, and all doubts must be resolved in favor of its validity. It must clearly appear that the statute violates the constitution before striking it down. The court's duty in determining the constitutionality of a statute is to uphold the statute under attack rather than defeat it. If there is any reasonable way to do so, the court should construe the statute as constitutionally valid. If the infringement of the superior law is clear beyond substantial doubt, the

statute can be stricken down. *State ex rel. Tomasic v. Unified Gov. of Wyandotte Co./Kansas City*, 264 Kan. 293, 300, 955 P.2d 1136 (1998).

Article 2, § 1 of the Kansas Constitution provides: "The legislative power of this state shall be vested in a house of representatives and senate." Article 2, § 21 of the Kansas Constitution provides: "The legislature may confer powers of local legislation and administration upon political subdivisions."

Lyon-Coffey argues that a certificate of convenience issued under K.S.A. 66-1,176(a) is a statewide concern, not a local concern, and that under the Kansas Constitution, the legislature cannot confer decisions concerning a statewide issue upon a local political subdivision. In support, it argues that the indirect economic effect of Burlington's decision may be felt by Lyon-Coffey's members outside of Burlington. This argument is not persuasive. Such economic effects could occur at any time a city changed a service provider. The decision of the trial court to the effect that the city's decision was local in character is correct.

Lyon-Coffey next argues that under RESA, the legislature authorized the KCC to choose the retail electric supplier within exclusive territories; therefore, conferring legislative power upon a city to choose the electric retail supplier for an annexed area pursuant to K.S.A. 66-1,176(a) is contrary to the other RESA statutes. The question is whether K.S.A. 66-1,176(a) delegates legislative powers or administrative powers.

"Legislative power is the power to make a law, as opposed to the power to enforce a law. A legislature may try to delegate the legislative power to make a law. Such a delegation is improper, unless specific constitutional authority allows the legislature to delegate its legislative power to a different branch of government. If the constitution does not authorize a delegation of such legislative power, then the delegation is improper as a violation of the separation of powers doctrine and art. 2, § 1, which vests legislative power with the legislature only. However, a legislature may delegate an administrative power to a different branch of government. Administrative power is the power to administer or enforce a law, as opposed to the legislative power to make a law. The legislature does not need constitutional authority to delegate administrative power because it is not delegating a power reserved for its branch of government under art. 2, § 1.

"It is often difficult to determine if the legislature has delegated the legislative power to make a law or the administrative power to administer a law. The differ-

ence between the two types of delegated powers depends upon the amount of specific standards included within the delegation. If the legislature has included specific standards in a delegation, then it has already enacted the law and it is simply delegating the administrative power to administer the law, based on the standards included in the delegation. On the other hand, if the legislature has not included specific standards within a delegation, then the legislature has delegated the legislative power to make the law. Such delegation is improper without constitutional authorization. [Citations omitted.]

"A delegated power constitutes administrative power if the delegation contains sufficient policies and standards to guide the non-legislative body in exercising the delegated power. [Citations omitted.] In other words, the legislature may enact general provisions and delegate to an administrative body the discretion to ' " 'fill in the details' " ' if the legislature establishes ' " 'reasonable and definite standards to govern the exercise of such authority.' " ' [Citations omitted.]" *State ex rel. Tomasic*, 264 Kan. at 303-04.

K.S.A. 66-1,176(a) does not set forth specific standards for the city to consider in granting a franchise to a retail electric supplier. The purposes of RESA and K.S.A. 66-1,176(a) are not the same. The purpose of K.S.A. 66-1,171(a) is to guide the KCC in dividing the state into geographical areas. These purposes do not necessarily apply when a city is deciding its supplier for the annexed area under K.S.A. 66-1,176(a).

If the city chooses the retail electric supplier that supplied retail electricity to the city immediately before the annexation of the area, that supplier is either exempt under K.S.A. 66-1,174 or already certified by the KCC under K.S.A. 66-1,174 or K.S.A. 66-1,172. The city is then in reality extending the boundaries of that supplier.

K.S.A. 66-1,176(a) confers legislative power to the cities for a local matter which is authorized by Article 2, § 21 of the Kansas Constitution. The KCC and the trial court correctly interpreted K.S.A. 66-1,176(a).

Affirmed.