Jerome A. Gorman, District Attorney Twenty-Ninth Judicial District Wyandotte County Criminal Justice Complex 710 North 7th Street, Suite 10 Kansas City, Kansas 66101-3051
Dear Mr. Gorman:
We are responding to your request for our legal advice on questions concerning the acceptance of prisoners by the Wyandotte county sheriff and jail. You provide us with five specific fact scenarios and ask about the duties of a county sheriff in each situation.[1] All of the five scenarios focus upon responsibility between the arresting law enforcement agency (city officers) and a county sheriff or jail in connection with taking actual physical custody of an arrestee who may need medical screening or care.
Your request letter notes that these issues often arise because neither the Kansas City Police Department nor the Wyandotte County Sheriff's office desires to "have any manpower unnecessarily on assignment at the hospital nor do they want to incur unnecessary overtime costs for their individual agency." Thus, when Kansas City police officers come to the county jail with a person under custodial arrest, or go directly to a hospital with a person in custody, the police want to turn that person over to county sheriff's personnel as soon as possible. However, the sheriff has adopted a screening process at the county jail that utilizes the assistance of a trained nurse and refuses to accept certain arrestees without first obtaining a doctor's written medical clearance. You ask for our opinion regarding the duties and responsibilities of a county sheriff in relation to both law enforcement agencies and a municipal court.
Statutes that speak to county sheriffs and county jails include K.S.A.12-4213, 19-811, 19-1901, 19-1910, 19-1916, 19-1930, 22-4613, 59-29b45et seq.[2] and 75-5217. We have also reviewed a seminal Kansas case that concerns the costs of providing medical care to a prisoner[3] and pertinent Attorney General Opinions.[4]
K.S.A. 19-1930 states that the "sheriff or the keeper of the jail inany county of the state shall receive all prisoners committed to the sheriff's or jailer's custody by the authority of the United Statesor by the authority of any city located in such county and shall keep them safely in the same manner as prisoners of the county until discharged in accordance with law."[5] Statutory construction rules allow "shall" to be read as "may" in some situations. However, such a reading is not allowed when there are penalties associated with failure to perform the function in question.
"Whether language in a statute is mandatory or directory is determined on a case-by-case basis, and the criteria is whether compliance with the language is essential to preserve the rights of the parties. If it is essential to the preservation of the rights of the parties, the statute is mandatory. Factors indicating the provisions of a statute are mandatory are: (1) the use of negative words that require an act shall be done by no other method or at no other time than that stated, or (2)provision for a penalty or other consequence for noncompliance. The statute is directory where the provision establishes a manner of proceeding and a time within which an official act is to be done and is intended to secure order, system, and dispatch of the public business."[6]
K.S.A. 19-1930 provides a penalty should a sheriff not comply with this statute:
"(f) If any sheriff or jailer neglects or refuses to perform the services and duties required by the provisions of this act, the sheriff or jailer shall be subject to the same penalties, forfeitures and actions as if the prisoners had been committed under the authority of this state."
Thus, because failure to comply with the statute carries with it a penalty, the duties imposed upon a sheriff or jailer under K.S.A.19-1930 are mandatory, not discretionary. This statute obviously requires the county sheriff or jailer to receive and take custody of all prisoners committed to the sheriff or jail by a city law enforcement officer. After consideration of all the legal authority cited herein, we have not located any authority supporting a county sheriff's out-right blanket refusal to take custody of persons arrested by city law enforcement officers and presented to the sheriff or jailer at a county jail, no matter the circumstances. We next address your question regarding the responsibility for the custody of persons arrested by city police officers and taken directly to a medical facility prior to transport to the county jail. The gist of your question is whether the sheriff must accede to a city police officer's request to take over the custody of an arrestee at a medical facility.
While the question of liability for medical expenses was answered in the Wesley Medical Center case,[7] we found no statute or appellate court decision that would extend the rationale of responsibility for medical expenses to responsibility for the physical custody of an arrestee or the manpower costs incurred in guarding the arrestee prior to presentation at the county jail. While Wesley Medical Center implies that the county may be responsible for the expenses incurred by a city law enforcement agency while the arrestee is in the latter's custody during the period in which the arrestee is undergoing medical treatment,[8] we are not comfortable, in the absence of statute or appellate court guidance, concluding that a county is liable for the manpower costs incurred by a city law enforcement agency in guarding an arrestee prior to presentation at the county jail. Accordingly, we do not believe that a sheriff has a legal duty to send a deputy to a medical facility to take custody of a person arrested by a city law enforcement officer.
In summary, a county sheriff must accept custody of prisoners who are taken to the county jail by city law enforcement officers and presented at the jail for incarceration. However, when a prisoner is taken directly to a medical facility by a city law enforcement officer prior to presentation at the county jail, the sheriff is not responsible for the custody of such prisoner until the latter is presented at the jail.
Sincerely,
Paul J. Morrison Attorney General
Theresa Marcel Bush Assistant Attorney General
[1] Scenario One: A person is arrested by city police officer pursuant to a warrant issued under K.S.A. 22-2302, but taken directly to a hospital for some reason. You ask if the sheriff must send a deputy to the hospital to stay with the prisoner until the prisoner is released and able to be taken to jail. Scenario Two: A person is arrested based upon probable cause, and not pursuant to a warrant, and is taken by a city police officer to a hospital for some reason. While they are at the hospital a state warrant for arrest is issued by a district court. You ask if the sheriff must assume the duty to guard such prisoners while at the hospital after such a warrant has been issued. Scenario Three: An individual appears before a municipal judge for sentencing on a misdemeanor charge but is determined to be under the influence and the judge cannot enter a sentence. The municipal judge therefore orders the individual to be incarcerated in the county jail until he or she is sober and can again be brought before the court. You ask whether the sheriff may refuse to accept such a prisoner into the jail until such time as the prisoner receives a complete medical evaluation (at a hospital) or their blood alcohol level is lower. Scenario Four: City police officers arrest a person, either on a warrant or for probable cause, but the person is obviously under the influence, as confirmed by a nurse from the jail. If the arrestee's blood alcohol is beyond a certain level, the jail will not accept the prisoner until after receiving a written medical clearance from a physician. You ask if the detention center (sheriff) may set such standards for admission of all arrestees under the influence. Scenario Five: City police officers arrest a person, either on a warrant or for probable cause, and the prisoner needs medical attention for some reason. The city police officer takes that person to the hospital for treatment where the person is examined and eventually given a medical release and taken to jail for incarceration. However, the jail refuses to accept the prisoner because of the level of examination given by hospital staff or takes issue with the form of release given by the hospital. You ask if this refusal is lawful.
[2] See K.S.A. 59-29b53 and 59-29b54 for specific procedures associated with law enforcement taking intoxicated persons into custody.
[3] Wesley Medical Center v. City of Wichita, 237 Kan. 807
(1985).
[4] Attorney General Opinions No. 2006-16 (K.S.A. 19-1930 permits a county to assess a county inmate a per diem charge for all time spent in a county jail, if a inmate is convicted); 2006-11 (the county sheriff has control over county jail operations unless a county correctional system has been properly established); 2001-55 (county sheriffs must comply with municipal court orders concerning incarceration); 2001-42 (per diem charge by county to city for maintenance of city prisoners), 94-158 (a county is responsible for jail expenses incurred by prisoners who are arrested for violating state law, irrespective of whether the prisoners were arrested by city police officers, KBI agents, or highway patrol officers); 91-85 (counties are responsible for the costs associated with persons arrested under state law while cities incur the costs associated with persons arrested under city ordinances); 83-93 (neither a sheriff nor a board of county commissioners may, as a precondition to receiving prisoners committed to a county jail by a city, require that the city agree to indemnify the county and sheriff for civil liability. However, pursuant to K.S.A. 19-1930, cities are liable for expenses of housing city prisoners held in county jail, including the medical expenses of such prisoners); and 79-13 (K.S.A.19-1930 authorizes and requires a county jail to house city prisoners).
[5] Emphasis added.
[6] Lyon-Coffey Elec. Co-op., Inc. v. State Corp. Comm'n, 29 Kan.App.2d 652, 660-61 (2001) (internal citations omitted). Emphasis added.
[7] Liability for medical expenses of an arrestee is dependent upon whether the arrestee was arrested and charged with a state law or a municipal law violation. If the former, county is liable; if the latter, city is liable. 237 Kan. at 815-816.
[8] "We hold that so long as an offender is arrested for violation of a state law and in due course is charged with a state crime and delivered to the county jail for confinement, the medical and otherincidental expenses incurred as a consequence of and following hisarrest, and until his transfer to such facility, are chargeable to thecounty. We further hold that a county's liability for charges and expenses for safekeeping and maintenance of the prisoner, including medical expenses, does not depend on which police agency happens to be called to the scene of the alleged crime or whether such expenses were incurred before or after he is placed in a county jail. The controlling factor is that the prisoner was arrested and subsequently charged with violation of a state law." 237 Kan. at 815. Emphasis added.