(75 P.3d 257)

No. 90,623

COLUMBUS TELEPHONE CO., INC., *et al.*, *Appellants*, v.
KANSAS CORPORATION COMMISSION, *Appellee*.

Opinion filed August 15, 2003.

*Thomas E. Gleason, Jr.*, of Gleason & Doty, Chartered, of Lawrence, for appellants.

*John McNish* and *Martha Coffman*, advisory counsel, and *Susan B. Cunningham*, general counsel, Kansas Corporation Commission, for appellee.

Before RULON, C.J., ELLIOTT and LEWIS, JJ.

RULON, C.J.: Petitioners, various local telephone service companies comprising the Independent Telecommunications Group

(ITG), appeal from an order from the Kansas Corporation Commission (KCC) relating to an adjustment for rate case expenses made to the revenue requirement of Wilson Telephone Co., Inc. (Wilson). The revenue requirement determination was made for purposes of ascertaining the appropriate support Wilson would receive from the Kansas Universal Service Fund (KUSF) under K.S.A. 66-2008.

In their brief, petitioners argued that jurisdiction of this appeal properly rests with the district court. In the alternative, petitioners assert the KCC's order excluding certain attorney fees and expenses from the rate case expenses adjustment was unlawful, unreasonable, and arbitrary. For the reasons specified below, we conclude that appeals from KUSF audits are properly taken to this court under K.S.A. 66-118a(b). Moreover, we conclude the KCC's decision regarding rate case expenses must be affirmed.

This case arises from an audit proceeding initiated by the KCC to determine Wilson's revenue requirement under K.S.A. 66-2008(e). Wilson is a Class B telephone utility which operates under traditional rate-of-return regulation. The KCC issued an order initiating the audit in September 2001. In this order, Wilson was directed to provide detailed information as required by K.A.R. 82-1-231 for a test year ending December 31, 2000. In a subsequent order, a procedural schedule was established and evidentiary hearing dates set. Thereafter, Wilson and the KCC's Staff (Staff) vigorously pursued documents and information to address the numerous legal issues inherent in determining a utility's revenue requirement—*i.e.*, rate base, operating income, rate of return, plant investments, depreciation, working capital, cost of capital, and taxes.

Shortly before the scheduled hearing date, Wilson and Staff negotiated a settlement agreement. In July 2002, Staff and Wilson filed a joint motion to approve a "Stipulated Settlement Agreement" (Agreement). The parties advised the KCC that the Agreement reflected a final revenue requirement both parties considered fair. In the Agreement, the parties stipulated that Wilson's payments from the KUSF would be reduced by $148,000 per year. The parties further agreed "there will be a true-up for rate case

expense incurred" for those expenses which had not been reported to Staff prior to April 23, 2002. Finally, Wilson reserved the right to set aside the Agreement and reinstate the audit proceeding if the KCC issued any order adverse to Wilson in this or any related docket.

On July 16, 2002, the KCC approved the Agreement and ordered a $148,000 reduction in KUSF support to Wilson, subject to true-up for "additional rate case expenses." No petition for reconsideration was filed by any party.

Several weeks later, Staff submitted a memorandum to the KCC discussing the additional rate case expenses Wilson had requested be included as part of the "true-up" process. Staff, however, recommended a final rate case expense adjustment which excluded a portion of the expenses claimed by Wilson. Staff indicated that some of the expenses were included in the calculations when the parties reached a settlement and should not be included again in the final adjustment.

In response, Wilson filed a motion for order enforcing the Agreement with the KCC. Wilson challenged Staff's calculations of the final adjustment and the exclusion of over $26,000 of the company's claimed expenses. Wilson also claimed that any continuing expenses the company incurred in addressing Staff's recommendation should be included as rate case expenses.

On September 5, 2002, the KCC issued its order on the post-Agreement dispute. The KCC agreed with Wilson that Staff's attempt to exclude certain claimed rate case expenses was contrary to the Agreement. However, the KCC determined Wilson had failed to submit any additional billings for rate case expenses and found that expenses incurred after the final order determining the revenue requirement were not "rate case expenses."

Wilson timely filed a petition for reconsideration of the KCC's order. ITG joined this petition and filed a motion to intervene. ITG is composed of Columbus Telephone Company, Inc.; Cunningham Telephone Company, Inc.; Gorham Telephone Company, Inc.; H&B Communications, Inc.; Home Telephone Company, Inc.; LaHarpe Telephone Company, Inc.; Moundridge Telephone Company, Inc.; Totah Telephone Company, Inc.; Twin

Valley Telephone, Inc.; Wamego Telephone Company, Inc.; and Wilson Telephone Company, Inc. ("Petitioners"). In their petition for reconsideration, petitioners objected to the KCC's order limiting rate case expenses to those incurred before the KCC's final order setting revenue requirements.

We should note that at oral argument petitioner's counsel conceded that South Central Telecommunications of Kiowa, Inc. was not a member of ITG, did not intervene before the KCC, and should not have been identified in the petition for judicial review. In addition, the record shows that Zenda Telephone Co., Inc. and South Central Telephone Assn., Inc., other parties named in the petition for judicial review, were not identified as part of the group that intervened before the KCC. Accordingly, South Central Telecommunications of Kiowa, Inc.; South Central Telephone Assn., Inc.; and Zenda Telephone Co., Inc., are dismissed from this proceeding as they are not properly before this court.

After a response from Staff, the KCC issued two orders on October 23, 2002. In one order the KCC granted ITG's petition to intervene. In the second order, the KCC denied Wilson's and ITG's petition for reconsideration. The KCC noted that it allowed Wilson to recover, as rate case expenses, costs incurred almost 1 year prior to the opening of its audit docket. The KCC further noted the KCC had a long-standing practice of recognizing a cutoff event for the inclusion of rate case expenses. Traditionally, the KCC has limited expenses to those expenses incurred before the order setting a company's revenue requirement and/or the rate design order. Because the expenses in dispute here were incurred after the KCC issued its determination of Wilson's revenue requirement, the KCC found the addtional expenses should not be classified as rate case expenses.

ITG, including Wilson, filed a timely petition for judicial review in the Saline County District Court. Petitioners asserted the order was arbitrary, capricious, unreasonable, and unlawful. In response, the KCC filed a motion to transfer the action, claiming this court had exclusive jurisdiction over the appeal under K.S.A. 66-118a(b). The district court ultimately found this appeal fell within the ex-

clusive jurisdiction of our court and directed the matter be transferred to this court under K.S.A. 66-118a(d).

## Jurisdiction

In their brief, petitioners reassert their argument that this appeal does not fall within the Court of Appeals' jurisdiction under K.S.A. 66-118a(b). At oral argument, however, petitioners' counsel requested this court to conclude that the Court of Appeals has jurisdiction over appeals arising from KUSF audit proceedings.

The question of whether the appellate court has subject matter jurisdiction is a question of law over which this court's review is unlimited. *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 414, 997 P.2d 681 (2000). Determining whether this court has jurisdiction requires interpretation of K.S.A. 66-118a. Interpretation of a statute poses a question of law over which this court's review is unlimited. *Lyon-Coffey Elec. Co-op, Inc. v. State Corp. Comm'n*, 29 Kan. App. 2d 652, 661, 31 P.3d 962, *rev. denied* 272 Kan. 1418 (2001).

The statute governing the appeal of KCC decisions vests the Court of Appeals with "exclusive jurisdiction to review any agency action . . . *arising from a rate hearing* . . . . Proceedings for review of other agency actions . . . shall be in accordance with K.S.A. 77-609 and amendments thereto." (Emphasis added.) K.S.A. 66-118a(b). The term "rate hearing" is not defined in the relevant statutes.

We recognize that a KUSF audit does not fall within what is traditionally viewed as a rate case because it does not directly involve determining rates a regulated utility can charge to its customers. *Cf. Western Resources, Inc. v. Kansas Corporation Comm'n*, 30 Kan. App. 2d 348, 42 P.3d 162 (2002) (electric rate proceeding instituted by the companies). However, this court has repeatedly utilized a common sense approach to defining the parameters of its jurisdiction in atypical KCC proceedings. See *Kansas Gas & Electric Co. v. Kansas Corp. Comm'n*, 14 Kan. App. 2d 527, 530, 794 P.2d 1165, *rev. denied* 247 Kan. 704 (1990) (jurisdiction to review overcharge dispute inextricably bound to tariffs established in prior rate case); *MAPCO Intrastate Pipeline Co. v. Kansas Cor-*

*poration Comm'n*, 10 Kan. App. 2d 527, 531, 704 P.2d 989 (1985) (tariff order came within court's jurisdiction because the tariffs dealt only with rates and revenues).

Recently, this court concluded K.S.A. 66-118a(b) gave this court jurisdiction over cases that only indirectly impacted on consumer rates. See *Citizens' Utility Ratepayer Bd. v. Kansas Corporation Comm'n*, 24 Kan. App. 2d 63, 941 P.2d 424, *rev. denied* 262 Kan. 959 (1997) ("CURB I"). In *CURB I*, this court concluded jurisdiction existed in a case involving an investigation into what Southwestern Bell Telephone Company (SWBT) could charge to its competitors in interconnection agreements. 24 Kan. App. 2d at 63-66. Although the proceeding would not produce a rate schedule for SWBT, we concluded such proceeding sufficiently related to ultimate rates passed on to consumers to fall within the court's exclusive jurisdiction. 24 Kan. App. 2d at 65. See also *Citizens' Utility Ratepayer Bd. v. Kansas Corporation Comm'n*, 24 Kan. App. 2d 222, 224, 943 P.2d 494 (1997), *aff'd in part, rev'd in part*, 264 Kan. 363, 956 P.2d 685 (1998) (finding jurisdiction in appeal from KCC orders generally implementing the federal and Kansas telecommunications deregulation acts).

This court was vested with original jurisdiction in appeals from rate hearings by the 1978 amendment to K.S.A. 66-118a. L. 1978, ch. 265, sec. 1, effective July 1, 1978. According to the available legislative history, granting this court jurisdiction in KCC rate appeals was designed to serve several purposes. First, it shortened the appeal process. (HB 2851, House Judiciary Committee Minutes, Jan. 30, 1978.) Second, it eliminated utilities' ability to file appeals in any county where the KCC order became effective, which created logistic problems. Finally, legislators noted that due to the complex nature of rate-making hearings, requiring such appeals to be taken to a single court would allow that court to develop expertise and a better understanding of the intricate issues that arise in such cases. (Summary of HB 2851, attached to House Judiciary Committee Minutes, Jan. 30, 1978).

The present case is sufficiently like a standard rate hearing to serve the purposes of the statute. As in *CURB I*, this case was handled before the KCC using the same procedures that would

apply in a traditional rate case. The prefiled testimony included evidence of Wilson's rate base, operating income, rate of return, plant investment, depreciation, working capital, cost of capital, and taxes. Moreover, the ultimate determination of a revenue requirement in a KUSF audit will indirectly impact on ratepayers across the State who pay into the KUSF. See K.S.A. 66-2008(a).

For the above reasons, we conclude this court has jurisdiction to consider appeals from KUSF audit proceedings.

## The Validity of the KCC Order

Concluding that we have jurisdiction to hear this appeal directly, we now turn to the merits. The merits on appeal are limited to the lawfulness of the KCC's order refusing to include post-Agreement expenses incurred as part of Wilson's rate case expense adjustment.

Under K.S.A. 66-118c, this court's review of an order of the KCC is in accordance with the Act for Judicial Review and Civil Enforement of Agency Actions (KJRA), K.S.A. 77-601 *et seq*. On appeal, the KCC's findings are presumed valid, and its order may only be set aside if it is not supported by substantial competent evidence, is without foundation in fact, or is otherwise unreasonable, arbitrary, or capricious. *Western Resources, Inc. v. Kansas Corporation Comm'n*, 30 Kan. App. 2d at 351. This court has previously held that an order of the KCC is " ' "lawful" if it is within the statutory authority of the commission, and if the prescribed statutory and procedural rules are followed in making the order. [Citation omitted.]' " *Farmland Industries, Inc. v. Kansas Corporation Comm'n*, 24 Kan. App. 2d 172, 175, 943 P.2d 470, *rev. denied* 263 Kan. 885 (1997). A KCC order is considered " ' "reasonable" if it is based on substantial competent evidence. [Citation omitted.]' " 24 Kan. App. 2d at 175. The KCC's action is arbitrary and capricious if it is unreasonable or without foundation in fact. *Farmland Industries, Inc. v. Kansas Corp. Comm'n*, 25 Kan. App. 2d 849, 852, 971 P.2d 1213 (1999).

Petitioners' arguments are all variations on a claim the KCC's decision was unfair or arbitrary. Petitioners cite no meaningful legal authority in their brief in support of their assertions. Petitioners argue that in order to curb abuse of power by the regulators and

to protect utilities' right to counsel, "rate case expenses" should include post-revenue requirement expenses incurred in addressing ongoing issues. Petitioners further argue that failure to allow a carrier to include post-revenue requirement expenses in its "rate case expenses" violates the statutory policies of the Kansas Telecommunications Act, K.S.A. 66-2001 *et seq.*

There is no dispute that prudently incurred rate case expenses are among the reasonably necessary expenses that public utilities are entitled to recover in a rate-making proceeding. See *Gas Service Co. v. Kansas Corporation Commission*, 4 Kan. App. 2d 623, 635, 609 P.2d 1157, *rev. denied* 228 Kan. 806 (1980); *In re Petition of PNM Gas Services*, 129 N.M. 1, 24, 1 P.3d 383 (2000). The KCC may not arbitrarily disallow an actual, existing expense incurred during a test year. However, claims for future expenses which are merely conjectural are not generally allowed unless the claims are based on known and measurable post-test year changes. *Gas Service*, 4 Kan. App. 2d at 635.

The KCC argues its definition of "rate case expense," which includes expenses incurred after the revenue requirement determination and/or rate design order, is reasonable. The KCC notes that normal test year expenses allowed to Wilson included consideration of recurring attorney fees and expenses incurred by the company, including costs for participating in other KCC proceedings. Moreover, the KCC asserts the revenue requirement would remain indeterminate for prolonged periods if that figure had to be continuously updated based on ongoing appeal costs and that such a delay is contrary to the test year concept.

This court is severely hampered in attempting to make any determination of whether the KCC's determination here was so arbitrary to be outside the zone of reasonableness. See *Farmland Industries, Inc. v. Kansas Corporation Comm'n*, 24 Kan. App. 2d at 195 (discussing the zone of reasonableness standard). First, the briefs fail to clearly indicate the amount of post-Agreement expenses Wilson contends were improperly excluded from the true-up adjustment. At oral argument, petitioners' counsel estimated the expense would be less than $5,000. Accepting petitioners' representation, such expenses do not reach the level of atypical, non-

recurring expenses which will fall outside the norm allowed based on Wilson's test year expenses. The exclusion of these expenses from rate case expense, which was to be amortized over a 5-year period, does not render the KCC's overall determination of the true-up adjustment or final revenue requirement outside the zone of reasonableness. This court may nullify a KCC order only when the decision is so unreasonable as to be outside the realm of fair debate. *Western Resources, Inc.,* 30 Kan. App. 2d at 352.

The KCC is obligated to consider competing policies of what expenses should be considered in rate-making decisions, including what amounts should be considered rate case expenses. Rate case expenditures involve some degree of management choice and discretion whether to incur the expenses. *Citizens Utility Board v. ICC,* 166 Ill. 2d 111, 129, 651 N.E.2d 1089 (1995). In establishing rates, the KCC is required to balance the public need for adequate, efficient, and reasonable service with the public utility's need for sufficient revenue to meet the cost of furnishing service and earn a reasonable profit. *Danisco Ingredients USA, Inc. v. Kansas City Power & Light Co.,* 267 Kan. 760, 773, 986 P.2d 377 (1999).

Under Kansas statutes, the KCC is required to balance competing interests. For example, the KCC is to ensure all Kansans have access to first class telecommunications services, that competition is encouraged, and that affordable rates are maintained. See K.S.A. 66-2002. The fact Wilson cannot recover every expense incurred through a methodology that best suits the interests of the company is not, on its face, contrary with legislative policies.

Affirmed.