(291 P.3d 490)

No. 108,411

THE S&T TELEPHONE COOPERATIVE ASSOCIATION, INC., *Appellant*, v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS (KCC), *Appellee*.

Opinion filed November 2, 2012.

*Colleen R. Harrell, James M. Caplinger*, and *James M. Caplinger, Jr.*, of James M. Caplinger, Chtd., of Topeka, for appellant.

*Andrew French* and *Dana A. Bradbury*, advisory counsel, of Kansas Corporation Commission, for appellee.

Before LEBEN, P.J., GREEN and MCANANY, JJ.

LEBEN, J.: The Kansas Corporation Commission (KCC) ordered a local telephone company to provide information that would be used to determine future payments to the company from the Kansas Universal Service Fund, and the telephone company provided some of that information. When the KCC failed to take further action within 30 days, the telephone company moved for an order directing increased support from the service fund based on the information the company had provided. The telephone company sought to apply a deadline found in K.S.A. 66-117(c), a Kansas

statute that comes into play when a common carrier or utility has applied for some change in rates or charges.

But the KCC denied the motion because it said that the telephone company had made no application under K.S.A. 66-117. We agree. An application is a request for some action or relief, not the mere filing of information in response to the order of a regulatory agency. No application was made here, and the 30-day limit found in K.S.A. 66-117(c) wasn't at issue.

All of this is critical to the telephone company's appeal because we have no jurisdiction over the appeal unless the KCC has taken final action on something before it. The telephone company's assertion that the KCC took final action here is solely dependent upon its claim that the KCC's failure to act constituted action because of the 30-day time limit in K.S.A. 66-117(c). Since that time limit has no application to this case, the KCC hasn't taken any appealable action; we therefore must dismiss this appeal for lack of jurisdiction.

## Factual Background

Let's begin by reviewing how this appeal came about since the first question we must address—one that we have found decisive—is whether we have jurisdiction to consider the appeal at all.

During proceedings involving many phone companies, KCC staff concluded that the S&T Telephone Cooperative Association, Inc. (S&T Telephone) was getting more money than it should from the Kansas Universal Service Fund (the Fund). KCC staff filed a motion asking the KCC to order an audit to determine how much support S&T Telephone should receive from the Fund. KCC staff alleged that S&T Telephone was receiving more support from the Fund than could be justified by its cost of service, contending that this had been true in each year from 2005 to 2010.

In response, S&T Telephone said it stood "ready to file any information required by the Commission" and asked that the KCC use data from 2011 as a "test year" upon which to base future payments. S&T Telephone also suggested that it file the required information in "mid to late March 2012" based on its 2011 audited financial data; S&T Telephone said that its 2011 financial audit

would be "completed by the first or second week of February 2012."

Based on these suggestions, the KCC approved using 2011 as the test year and ordered that S&T Telephone provide specified information, "based upon 2011 audited financial information," by March 15, 2012. S&T Telephone sought a short extension of that deadline and filed a response on March 23, 2012.

The response contained written testimony from Kevin J. Kelly, S&T Telephone's expert witness, and Steve Richards, S&T Telephone's chief executive officer. Richards explained that S&T Telephone was a rural, local-exchange telephone provider to about 2,400 customers in northwest Kansas. Kelly said that the response was a "compliance filing" in response to the KCC's order. Kelly provided financial schedules that showed a "revenue deficiency" for the company of $1,167,107, but he also noted that the company's financial data as reported wasn't from audited statements. He said that S&T Telephone estimated that audited statements would be available within 1 month. Kelly's testimony said that "[o]nce the auditors have issued the [audited] financial statements, S&T will provide the Commission a copy . . . ."

But the next thing S&T Telephone filed—1 month later—wasn't the audited information. Instead, the company filed a motion asking the KCC to rule that because the KCC had not acted within 30 days after S&T Telephone's March response, S&T Telephone's reimbursements from the Fund must be adjusted according to the financial data S&T Telephone had filed for the 2011 test year. S&T Telephone contended in the motion that its March 23 filing counted as an application for change in rate or charge under K.S.A. 66-117 and that such changes become effective after 30 days if the KCC does not act to suspend the change under K.S.A. 66-117(c).

KCC staff responded that S&T Telephone hadn't made an application of any kind and that the proceeding was governed by K.S.A. 2011 Supp. 66-2008—a specific statute authorizing periodic KCC review of Fund disbursements—not K.S.A. 66-117, the general statute for utility rate-change proceedings.

The KCC agreed with its staff's position, denying S&T Telephone's motion. The KCC ruled that the proceeding initiated by

its audit order was a Fund-specific one under K.S.A. 2011 Supp. 66-2008, not a rate proceeding under K.S.A. 66-117. And the KCC found that S&T Telephone's filing wasn't an application for a change of rates or charges under K.S.A. 66-117, so no 30-day time limit applied. The KCC also noted that S&T Telephone hadn't provided audited information, as required by the KCC's earlier order:

"It is irrational to suggest that S&T should be automatically entitled to an increase in [Fund payments] in excess of $1 million based upon a filing which omits mandatory information, particularly when the completed financial statements will likely require S&T to make adjustments to the information and financial data included in its filing."

S&T Telephone asked for reconsideration, arguing that the KCC's position was contrary to its past practice in Fund-audit proceedings; S&T Telephone cited several Fund-audit proceedings in which the KCC had issued orders suspending any change in Fund reimbursements while the audit was pending, an act consistent with S&T Telephone's position. S&T Telephone didn't dispute its failure to provide audited financial statements in its initial filing, but it said it had provided that information to KCC staff on May 15, 2012—2 weeks after it had filed the motion claiming that the KCC's failure to act on the company's rate-change application within 30 days required that the change be put into effect immediately.

The KCC denied the motion for reconsideration. As to its past practice of issuing suspension orders, the KCC said that "although suspension orders have been issued in past [Fund] audits, the Commission has never decided whether a suspension order is necessary or ruled on the effect of non-issuance." The KCC again emphasized that S&T Telephone hadn't applied for any relief and that Fund audits were governed by K.S.A. 2011 Supp. 66-2008, not K.S.A. 66-117. As to the lack of audited information, the KCC noted that S&T Telephone still had not filed audited financial information; no filing reflecting audited financial information is found in the record on appeal.

S&T Telephone has appealed to this court.

ANALYSIS

We begin—and end—our analysis with the jurisdiction question. Appeals from the Kansas Corporation Commission are governed by the Kansas Judicial Review Act, K.S.A. 77-601 *et seq*. The Kansas Supreme Court noted in *Bartlett Grain Co. v. Kansas Corporation Comm'n*, 292 Kan. 723, 727, 256 P.3d 867 (2011), that the Kansas Judicial Review Act applies to all KCC appeals other than those arising from a rate hearing. See K.S.A. 2011 Supp. 77-603(a). For rate hearings, appeals are directly made to the Court of Appeals (as S&T Telephone has done here), but the Kansas Judicial Review Act applies in other respects. See K.S.A. 2011 Supp. 77-603(a); K.S.A. 77-609; K.S.A. 66-118a(b); K.S.A. 2011 Supp. 66-118c; *Citizens' Utility Ratepayer Bd. v. Kansas Corporation Comm'n*, 47 Kan. App. 2d 1112, Syl. ¶ 1, 284 P.3d 348 (2012).

The significant point from the Kansas Judicial Review Act here is that appeals are allowed only from a final agency action, such as the approval or denial of a requested license, except when postponement of the appeal would result in irreparable harm or an inadequate remedy. See K.S.A. 77-607; K.S.A. 77-608. S&T Telephone doesn't claim irreparable harm or inadequate remedy if its appeal is delayed, so we have a single question that determines our jurisdiction: Has the KCC taken any final action here?

S&T Telephone's claim that the KCC has taken some final action is dependent upon its assertion that the telephone company did make an application under K.S.A. 66-117, triggering the requirement of K.S.A. 66-117(c) that the "schedule" proposed in a rate-change application "shall be deemed approved by the commission and shall take effect on the proposed effective date" if the KCC doesn't "suspend the proposed schedule within 30 days of the date the [schedule] is filed" in the utility's "application."

But here it's clear that S&T Telephone made no application. And even if its filing could somehow be considered an application, Fund-audit proceedings are governed by K.S.A. 2011 Supp. 66-2008, not K.S.A. 66-117. So the 30-day time limit in K.S.A. 66-117(c) doesn't apply, and the KCC's failure to act within 30 days of S&T Telephone's filing can't be deemed a final action approving a new Fund-reimbursement rate for S&T Telephone.

First, S&T Telephone didn't make an application of any kind. An application, in this context, is a *request for something*. One of the definitions of application is a "request, as for assistance, employment, or admission to a school." American Heritage Dictionary 86 (5th ed. 2011). Here, S&T Telephone filed what its expert witness called a "compliance filing" in response to a KCC order to do so. Although the filing showed a revenue shortfall for the company (which might support a greater distribution from the Fund), it didn't contain a request for any relief—and it noted that audited financial information wasn't yet available and would be provided in about a month.

Within the context of K.S.A. 66-117, for S&T Telephone's filing to be an "application," it would need to much more clearly communicate that *something* was being *requested*. K.S.A. 66-117(a) provides that a common carrier or utility under KCC jurisdiction can't "make effective any changed" rate or charge unless it files the proposed change "at least 30 days prior to the proposed effective date." K.S.A. 66-117(c) provides that the KCC may not delay the effective date "more than 240 days beyond the date the public utility or common carrier *filed its application requesting the proposed change*." (Emphasis added.) And K.S.A. 66-117(c) also provides that if the KCC "does not suspend the proposed schedule within 30 days of the date the same is filed . . . , [the] proposed schedule shall be deemed approved by the commission and shall take effect on the proposed effective date." So the statute refers to a "proposed change" that has been "request[ed]" in an "application." The statute also refers to a "proposed effective date." The "compliance filing" S&T Telephone made in response to the KCC order didn't mention a proposed effective date and didn't explicitly request any change in S&T Telephone's Fund distribution amount. The filing can't be considered an application, which would be required if K.S.A. 66-117(c) were to be applied.

Second, even if this filing could be considered an application, K.S.A. 66-117 doesn't apply at all—this was a proceeding authorized by K.S.A. 2011 Supp. 66-2008, not K.S.A. 66-117. K.S.A. 2011 Supp. 66-2008 required the KCC to establish the Fund, and it gives the KCC the duty to "periodically review" the Fund "to determine

if the costs" of qualified carriers "to provide local service justify modification" of the Fund. And K.S.A. 2011 Supp. 66-2008 has its own procedures and time limits. Carriers can request additional funding under either subsection (d) or (f). If subsection (d) applies, the KCC must "issue an order on the request within 120 days of filing," and while that time limit is not applied to requests under subsection (f), the KCC still must act "expeditiously." K.S.A. 2011 Supp. 66-2008(d), (f). Given these specific provisions, there would be no reason to apply the general rate-hearing provisions of K.S.A. 66-117. Though K.S.A. 66-117 applies to hearings that may change a regulated entity's rates, tolls, charges, or classifications, none of those would be changed in a Fund audit. The only thing that may be changed as a direct result of the Fund audit are the payments made to the entity (here, S&T Telephone) from the Fund.

It's the time limit within K.S.A. 66-117(c) that S&T Telephone seeks to apply, but K.S.A. 2011 Supp. 66-2008 has its own time limits, as we've just noted—and they differ from those found in K.S.A. 66-117. K.S.A. 66-117(c) generally gives the KCC 240 days to consider a rate-change request, though the KCC must act within 30 days to suspend the effective date of the proposed change. But K.S.A. 2011 Supp. 66-2008 requires that the KCC act within 120 days on some requests for supplemental money from the Fund and explicitly provides no time limit in other cases. See K.S.A. 2011 Supp. 66-2008(d), (f). Where two potentially applicable statutes would produce inconsistent results, the more specific statute controls over a more general one. *State v. Turner*, 293 Kan. 1085, 1088, 272 P.3d 19 (2012). K.S.A. 2011 Supp. 66-2008 is a specific statute that applies to KCC consideration of changes to Fund payments.

There is one past case that we should mention—*Columbus Telephone Co. v. Kansas Corporation Comm'n*, 31 Kan. App. 2d 828, 75 P.3d 257 (2003)—because it involved a Fund-audit appeal, and our court held that the statute allowing direct appeal to the Court of Appeals applied, even though that statute, K.S.A. 66-118, is part of the rate-hearing statutes, not the specific statute regarding Fund audits. But the *Columbus Telephone Co.* opinion didn't conclude that Fund audits *were* rate proceedings under K.S.A. 66-117. Rather, the court simply concluded that an appeal from a Fund

audit was "sufficiently like a standard rate hearing to serve the purposes of the statute" and allow direct appeal to the Court of Appeals. *Columbus Telephone Co.*, 31 Kan. App. 2d at 833. Fund audits are not rate hearings under K.S.A. 66-117, and *Columbus Telephone Co.* has no contrary holding.

S&T Telephone has one additional argument that we must consider—that because the KCC has treated Fund audits in the past as if they were rate proceedings under K.S.A. 66-117, it must continue to do so. It's true that when an agency changes a long-standing practice, it must provide an explanation for the change. See *Kansas Industrial Consumers Group, Inc. v. Kansas Corporation Comm'n*, 36 Kan. App. 2d 83, 90, 138 P.3d 338, *rev. denied* 282 Kan. 790 (2006). But it's also true that an administrative agency can't modify the terms of a statute. See, *e.g.*, *Hall v. Knoll Building Maintenance, Inc.*, 48 Kan. App. 2d 145, Syl. ¶ 9, 285 P.3d 383 (2012). Here, K.S.A. 66-117 simply doesn't apply. The KCC is free to apply some of the same procedures it applies in rate hearings to Fund-audit proceedings—but it's certainly not required to do so by any statute. And the KCC has adequately explained the position it has taken in S&T Telephone's case.

The proceeding before the KCC here was an audit to determine S&T Telephone's need for payments from the Fund. S&T Telephone's filing in response to the KCC's order was neither an application for any relief nor a proposed change to any rate or charge on a scheduled date. Thus, the 30-day time limit found in K.S.A. 66-117(c) did not apply. S&T Telephone concedes that if that provision doesn't apply here, then the KCC has taken no final action. Because the KCC hasn't taken any final action, we have no jurisdiction to consider this appeal.

The appeal is therefore dismissed for lack of jurisdiction.